UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

CHANGXIN MEMORY TECHNOLOGIES, INC.,
No. 799 Qide Road, Economic and Technological Development Area, Hefei City, Anhui Province, China,

*Plaintiff*,

v.

U.S. DEPARTMENT OF DEFENSE a/k/a U.S. DEPARTMENT OF WAR,
1400 Defense Pentagon, Washington, D.C. 20301,

PETE HEGSETH, in his official capacity as SECRETARY OF THE UNITED STATES DEPARTMENT OF DEFENSE,
1000 Defense Pentagon, Washington, D.C. 20301,

STEVE FEINBERG, in his official capacity as DEPUTY SECRETARY OF THE UNITED STATES DEPARTMENT OF DEFENSE,
1010 Defense Pentagon, Washington, D.C. 20301,

MICHAEL CADENAZZI, in his official capacity as ASSISTANT SECRETARY OF DEFENSE FOR INDUSTRIAL BASE POLICY,
3011 Defense Pentagon, Washington, D.C. 20301,

*Defendants*.

Civ. Action No. _

**COMPLAINT**

Plaintiff ChangXin Memory Technologies, Inc. ("CXMT"), by and through its undersigned counsel, hereby respectfully files this Complaint against Defendants, the U.S. Department of Defense ("DoD"); Pete Hegseth, in his official capacity as Secretary of Defense, U.S. Department of Defense; Steve Feinberg, in his official capacity as Deputy Secretary of Defense; and Michael Cadenazzi, in his official capacity as Assistant Secretary of Defense for Industrial Base Policy, alleging as follows:

## INTRODUCTION

1. CXMT is a semiconductor company that manufactures dynamic random-access memory ("DRAM") chips—the standard memory chip found in everyday consumer electronics—for commercial and civilian use. It is a wholly-owned subsidiary of the publicly traded CXMT Corporation. This lawsuit challenges and seeks to enjoin enforcement of DoD's arbitrary and capricious decision to designate CXMT as a statutorily defined "Chinese Military Company" ("CMC") pursuant to Section 1260H of the William M. (Mac) Thornberry National Defense Authorization Act ("NDAA") for Fiscal Year 2021.[1]

2. DoD first designated CXMT on January 7, 2025, without providing CXMT with notice or an opportunity to be heard. DoD based the listing on its determination that CXMT operated indirectly in the United States, was a military-civil fusion contributor affiliated with the Ministry of Industry and Information Technology ("MIIT") and, through its manufacture of chips, was a contributor to the Chinese defense industrial base. These determinations rested on objectively incorrect facts. For example, DoD's determination that CXMT's chips contributed to

[1] Pub. L. No. 116-283, § 1260H, 134 Stat. 3388, 3965-66 (Jan. 1, 2021), as amended Pub. L. No. 118-159, § 1346, 138 Stat. 1773, 2123-26 (Dec. 23, 2024) [hereinafter, "Section 1260H"]. The list that DoD publishes in accordance with Section 1260H is referred to herein as the "CMC List" or the "1260H List."

the Chinese military was based on an advertisement for "military grade" products, which was a misrepresentation made by an unauthorized distributor who subsequently acknowledged that the "military grade" reference to such products was erroneous.

3. For more than a year following its initial listing, CXMT, through counsel, engaged with DoD in hopes of correcting the factual record, addressing any outstanding concerns, and, ultimately, securing removal of CXMT's improper designation as a Chinese Military Company.

4. On February 13, 2026, DoD published a "Notice of Availability of Designation of Chinese Military Companies" (the "February 2026 Notice"), which stated that "the Deputy Secretary of Defense has determined that the following previously listed entities should be removed from the most recent Section 1260H List announced on January 7, 2025." CXMT was included among the companies to be removed from the 1260H List.

5. DoD withdrew the February 2026 Notice later that day, without explanation. When CXMT sought confirmation of its removal from the list, DoD told CXMT that it was still processing CXMT's removal request and that the list might "require updates based on the statutory requirement to review the most recent information available." CXMT asked DoD to identify any new information it was considering and to give CXMT an opportunity to be heard before the agency took any further action. DoD refused and then went silent.

6. On June 8, 2026, DoD redesignated CXMT a CMC (the "June Listing") based on the agency's determinations that CXMT operates in the United States, is directly and indirectly affiliated with MIIT, and is indirectly affiliated with China's State-Owned Assets Supervision and Administration Commission of the State Council ("SASAC"). None of these determinations is supported by the factual record, by applicable law, or by reasoned decision-making.

7. Moreover, DoD's stated rationale for the June Listing rests on information that was available to the agency before its published determination that CXMT should be removed from the CMC List, a determination required by law to be made based on the latest available information.

8. DoD's arbitrary and capricious designation and redesignation of CXMT as a CMC, and its continuing failure to remove CXMT from the CMC List, are unlawful under the Administrative Procedure Act. DoD's actions also violated CXMT's rights to due process. Accordingly, this Court should set aside, enjoin, and declare unlawful the challenged designation.

## JURISDICTION AND VENUE

9. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 (federal-question jurisdiction) and § 2201 (the Declaratory Judgment Act).

10. This Court has the authority to grant declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*, and the Court's inherent equitable power.

11. Venue is proper under 28 U.S.C. § 1391(b) and (e) as this is a civil action in which Defendants are federal agencies and officers acting in their official capacities, a substantial part of the events giving rise to these claims occurred in the District of Columbia, and Defendants reside in this district.

## PARTIES

12. Plaintiff CXMT is a private company headquartered in Hefei, China, with no subsidiaries or branch offices in the United States. CXMT is a developer and manufacturer of DRAM chips with a growing global customer base. CXMT's parent company, CXMT Corporation, is publicly traded on the Shanghai Stock Exchange and is widely held by institutional and individual shareholders.

13. Defendant DoD is a department of the Executive Branch of the United States Government and an executive agency within the meaning of 5 U.S.C. § 551(1). DoD is responsible for publishing and maintaining the CMC List according to the designation criteria in Section 1260H.[2]

14. Defendant Pete Hegseth is the Secretary of Defense. In that capacity, he oversees the functions of DoD, including the maintenance of the CMC List. Secretary Hegseth is sued in his official capacity.

15. Defendant Steve Feinberg is the Deputy Secretary of Defense, who determined that CXMT qualified for designation as a CMC. Deputy Secretary Feinberg is sued in his official capacity.

16. Defendant Michael Cadenazzi is the Assistant Secretary of Defense for Industrial Base Policy. In that capacity, he manages the processes for the designation of entities on the CMC List and the removal of entities from the CMC List. Assistant Secretary Cadenazzi is sued in his official capacity.

## FACTS

### I. CXMT and Its Business

17. CXMT develops and manufactures DRAM chips.

18. A DRAM chip is the memory chip used to store data in nearly every type of modern computing device, including smartphones, laptops, PCs, servers, gaming consoles, and cars. DRAM is a device's working memory, or temporary storage for data and files that are used by a phone or computer in support of whatever applications or programs are running at the moment, as distinct from long-term storage used, for example, to maintain files saved on a powered-off device.

---

[2] *See* Section 1260H(a).

DRAM chips conform to open, industry-wide specifications, so that chips from different suppliers are interchangeable. Device manufacturers generally buy DRAM chips from an open market.

19. Founded in 2017, CXMT is a relative newcomer to the DRAM market, but it is one of the few companies in the world able to add significant DRAM capacity to help meet growing worldwide demand.

20. The technologies that CXMT developed and patented have enabled CXMT to launch self-developed DRAM chips for mass production since 2019. CXMT's products now deliver internationally competitive performance across key metrics, including speed and efficiency. In recognition of CXMT's achievements and contribution to technology innovation, LexisNexis, a leading global IP data and analytics provider, named CXMT to its Top 100 Global Innovators list in 2025.[3]

21. CXMT supplies many leading consumer technology companies, and more companies are in line to test CXMT's DRAM chips. CXMT's chips are used in laptops, smartphones, and servers sold to ordinary consumers around the world.

## II. CXMT Is Not a Military Company

22. CXMT is not affiliated with the Chinese military.

23. CXMT designs, produces, and sells its DRAM chips for civilian and commercial use, not for military use. Its chips conform to the JEDEC standard—the open industry memory standard, which does not carry the mandatory requirements imposed for military-grade components. CXMT does not hold any licenses to manufacture products for military use, and its chips do not meet the mandatory requirements of the Chinese military standards for semiconductor

---

[3] *Top 100 Global Innovators for 2025*, LexisNexis Intell. Prop. Sols., https://www.lexisnexisip.com/resources/top-100-global-innovators-for-2025/ (last visited Aug. 24, 2026).

integrated circuits such as memory chips, including standards relating to military oversight, temperature, packaging, and testing. Moreover, notwithstanding that CXMT's DRAM chips are generally not subject to U.S. Export Administration Regulations ("EAR"), the technical specifications of its DRAM chips are equivalent to products that would be classified as EAR99 thereunder, a classification which the U.S. Bureau of Industry and Security ("BIS") identifies as for "purely civilian uses."[4]

24. CXMT has maintained and enforced a robust compliance system that screens for and prohibits any sales that could potentially reach military end users. This system includes the model elements that BIS recommends and has been successfully audited three times by two different Big Four accounting firms. CXMT consistently declines commercial opportunities that fail this compliance screening. CXMT is not a qualified Chinese military provider, has no military production licenses, and has never itself advertised or authorized a third party to advertise on a military procurement platform.

25. CXMT is not an agent or instrumentality of any government or military. Its parent company, CXMT Corporation, has always operated under an independent board, and successive rounds of open-market capital raising have further diversified the ownership of its parent company. In July 2026, CXMT's parent company listed on the Shanghai Stock Exchange, becoming a publicly traded company with an even broader shareholder base, which includes prominent international institutional investors. CXMT's management comprises a team of well-known entrepreneurs and professionals who operate within an independent corporate governance structure. None of CXMT's executives is affiliated with the Chinese military.

---

[4] Press Release, Bureau of Indus. & Sec., U.S. Dep't of Com., *Commerce Eases Export Controls on Syria* (Aug. 28, 2025), https://www.bis.gov/press-release/commerce-eases-export-controls-syria.

## III. NDAA Section 1260H: The Statutory Framework Governing CMC Designations

26. Congress enacted Section 1260H of the NDAA for Fiscal Year 2021 to identify Chinese companies that support the Chinese military, directing the Secretary of Defense to compile, publish, and annually update a list of such companies operating in the United States.[5]

27. Section 1260H requires DoD to publish an annual list of Chinese Military Companies, or "CMCs," that operate directly or indirectly in the United States. Section 1260H defines the term Chinese Military Company to mean an entity that is "engaged in providing commercial services, manufacturing, producing, or exporting" and that satisfies either of the following two additional conditions:[6]

28. First, a company meets the CMC criteria if it is:

> Directly or indirectly owned by, controlled by, or beneficially owned by, affiliated with, or in an official or unofficial capacity acting as an agent of or on behalf of, the People's Liberation Army, Chinese military and paramilitary elements, security forces, police, law enforcement, border control, the People's Armed Police, the Ministry of State Security (MSS), or any other organization subordinate to the Central Military Commission of the Chinese Communist Party, the Chinese Ministry of Industry and Information Technology (MIIT), the State-Owned Assets Supervision and Administration Commission of the State Council (SASAC), or the State Administration of Science, Technology, and Industry for National Defense (SASTIND).[7]

29. Congress, through a December 2024 amendment of Section 1260H, defined "affiliated with" to mean "in close formal or informal association."[8]

---

5 Section 1260H, *supra* note 1.

6 Section 1260H(g)(2)(B).

7 *Id.* (g)(2)(B)(i)(I).

8 *Id.* (g)(1).

30. Second, a company meets the CMC criteria if it is "identified as a military-civil fusion contributor to the Chinese defense industrial base"[9] through any of eight enumerated categories.[10]

31. A CMC must also "operat[e] directly or indirectly in the United States or any of its territories and possessions."[11] As amended on December 23, 2024, the statute defines that phrase to "include[] an entity selling goods in, or receiving goods or services from, the United States or any of its territories or possessions, regardless of whether the entity has a physical presence in the United States."[12]

32. Section 1260H directs DoD to submit to the Committees on Armed Services of the Senate and the House of Representatives a list of each entity identified as a Chinese military company, and to "include in such submission, as applicable, a justification for adding any entities to the list and for deleting any entities from a prior list."[13] "Concurrent with the submission of each list," the Secretary must "publish the unclassified portion of such list in the Federal Register."[14]

33. The Federal Register is the mechanism by which the public is put on notice of the Secretary's additions to and deletions from the CMC List.[15] The publication of the CMC List on

---

[9] *Id.* (g)(2)(B)(i)(II).

[10] *Id.* (g)(3).

[11] *Id.* (a).

[12] *Id.* (g)(4).

[13] *Id.* (b)(1).

[14] *Id.* (b)(2)(A).

[15] *See id.*; 44 U.S.C. § 1507 (providing that the filing of a document for public inspection constitutes notice of its contents).

the Federal Register thus indicates that the Secretary has determined which entities to add and which to remove from the list based on the latest information available.[16]

34. Once designated a CMC, the designated entity faces cascading statutory sanctions. The National Defense Authorization Act for Fiscal Year 2024 bars DoD from contracting with any CMC beginning June 30, 2026.[17] The Further Consolidated Appropriations Act for 2024 imposes the same prohibition on the Department of Homeland Security.[18] Congress has also directed the President to prepare reports, no later than 2027, stating whether CMCs should also be included on the "Non-SDN Chinese Military-Industrial Complex Companies List,"[19] inclusion on which prohibits U.S. persons from trading the entities' public securities.[20]

35. Beyond these statutory consequences, the CMC designation inflicts stigma and private-market harm of its own. As the District of Columbia Circuit recently confirmed, "inclusion on the list 'can be a blow to designated companies' reputations[.]'"[21] And as the court observed at the outset of *WuXi AppTec Co. v. U.S. Department of Defense*, "[a] scarlet letter sends a clear

---

[16] *Cf. Humane Soc'y of the U.S. v. U.S. Dep't of Agric.*, 41 F.4th 564, 570 (D.C. Cir. 2022) (holding, under the Federal Register Act, that a rule filed for public inspection "becomes 'valid' against the public at large" (quoting 44 U.S.C. § 1507)).

[17] National Defense Authorization Act for Fiscal Year 2024, Pub. L. No. 118-31, § 805(a)(1), 137 Stat. 136, 315 (Dec. 22, 2023).

[18] Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, § 536, 138 Stat. 460, 622 (Mar. 23, 2024).

[19] National Defense Authorization Act for Fiscal Year 2026, Pub. L. No. 119-60, § 8531, 139 Stat. 718, 1936 (Dec. 18, 2025).

[20] 31 C.F.R. § 586 et seq.

[21] *SZ DJI Tech. Co., Ltd v. U.S. Dep't of Def.*, 2026 WL 2357473, at *1 (D.C. Cir. Aug. 14, 2026); *Hesai Tech. Co., Ltd v. U.S. Dep't of Def.*, 2026 WL 2409540, at *2 (D.C. Cir. Aug. 18, 2026).

message: keep away."[22] Congress created the CMC List in part to warn third parties away from those it names, and the market responds accordingly. *Infra* ¶¶ 68-69.

## IV. DoD's Designation of CXMT as a CMC in 2025

36. DoD first designated CXMT as a Chinese Military Company in January 2025. CXMT then engaged DoD for more than a year to correct the record, supply additional information, and demonstrate that there was no basis for the designation, all in an effort to secure CXMT's removal from the CMC List.

### A. DoD Adds CXMT to the CMC List in 2025 on Erroneous Grounds

37. On January 7, 2025, without providing notice, an opportunity to be heard, or an explanation of its decision, DoD designated CXMT as a CMC operating in the United States under Section 1260H of the NDAA.[23]

38. CXMT requested the full administrative record of the CMC designation on January 22, 2025. On February 5, DoD provided CXMT with an eight-page report, attached hereto as **Exhibit A** (the "2024 Report"). The 2024 Report contains numerous factual errors, relies on outdated allegations and untrustworthy sources, and fails to articulate a legally or factually adequate basis for the designation.

---

[22] *WuXi AppTec Co., Ltd. v. Dep't of Def.*, 2026 WL 2279624, at *1 (D.D.C. Aug. 7, 2026).

[23] *See* U.S. Dep't of Def., *Entities Identified as Chinese Military Companies Operating in the United States in Accordance with Section 1260H* (Jan. 7, 2025), https://media.defense.gov/2026/Jun/08/2003945537/-1/-1/1/ENTITIES-IDENTIFIED-AS-CHINESE-MILITARY-COMPANIES-OPERATING-IN-THE-UNITED-STATES-IN-ACCORDANCE-WITH-SECTION-1260H.PDF [hereinafter "2025 CMC List"]; U.S. Dep't of Def., *DOD Releases List of Chinese Military Companies in Accordance with Section 1260H* (Jan. 7, 2025), https://www.war.gov/News/Releases/Release/Article/4023145/dod-releases-list-of-chinese-military-companies-in-accordance-with-section-1260/ (containing link to 2025 CMC List).

39. Among other things, the 2024 Report claims that CXMT is a CMC because (i) it is a military-civil fusion contributor based on its purported affiliation "with MIIT through project funding and investment," and (ii) it contributes to the Chinese defense industrial base through the manufacture of its products.[24] Instead of identifying a funding or investment by MIIT into CXMT, the 2024 Report alleges only that MIIT co-manages the "Big Fund," which has invested in CXMT.[25] As discussed below, however, the Big Fund is a standalone corporate entity with its own stockholders, directors, and managers, and MIIT does not control or participate in the Big Fund's individual investment decisions. In any event, DoD alleges only that MIIT manages a fund that holds a minority stake in CXMT's parent. DoD does not claim that MIIT directly invests in CXMT or its parent, nor does it provide any evidence to that effect. An investment manager is not "affiliated with" every company its funds invest in. *Infra* ¶ 92.

40. The 2024 Report further claims, in error, that CXMT contributes to the defense industrial base because its microchips are dual-use products that can be used in military equipment. The 2024 Report links CXMT's microchips to military use based on an advertisement that described CXMT's products as "military grade."[26] However, as CXMT later explained to DoD, *infra* ¶ 44, an unauthorized CXMT product distributor posted that advertisement and later acknowledged that its reference to "military grade" was wrong. CXMT has never designed or manufactured its products for military use, and its products simply do not meet the mandatory requirements for Chinese military use. *Supra* ¶¶ 23-24.

---

[24] 2024 Report at 7-10.

[25] 2024 Report at 8-9.

[26] 2024 Report at 7-8.

41. The 2024 Report's conclusion that CXMT operates indirectly in the United States is also based on outdated information and unsound reasoning. DoD bases its conclusion on purported cooperation between CXMT and certain U.S. companies,[27] when such cooperation stopped in 2022 due to the BIS's October 2022 changes to the EAR.[28] The only other support DoD cites for its conclusion was a shipment from CXMT to California. However, this was merely an isolated shipment returning to Nextest Systems' California office a demo semiconductor test system that Nextest had originally sent to CXMT from South Korea. The return of a single shipment does not constitute "operat[ion]" in the U.S.

42. The 2024 Report also includes many assertions that, although not cited as bases for the designation, are factually incorrect. For instance, the 2024 Report asserts, without any evidence, that CXMT is one of the "leading enterprises in the . . . China Sound Valley."[29] This is wrong. CXMT has always been located in the Economic and Technological Development Area of Hefei city, an entirely different development area that is approximately 17 miles away from the China Sound Valley.

43. Some of these errors trace back to the 2024 Report's principal source: an unauthored article published by a private consultancy called Horizon Advisory. The Horizon Advisory article makes numerous misleading statements. Among other things, it misstates CXMT's location, concludes that CXMT's products serve military end-users based on an

---

[27] 2024 Report at 10.

[28] *See* Implementation of Additional Export Controls: Certain Advanced Computing and Semiconductor Manufacturing Items; Supercomputer and Semiconductor End Use; Entity List Modification, 87 Fed. Reg. 62,186 (Oct. 13, 2022) (interim final rule).

[29] 2024 Report at 6.

unauthorized distributor's false advertising, and baselessly asserts that CXMT co-invests with military-tied entities, one of which does not even exist.

**B. CXMT Engages with DoD Extensively to Correct the Record and Seek Removal from the 2025 CMC List**

44. On April 14, 2025, CXMT submitted a formal reconsideration request to DoD (the "Removal Request"). In its request, CXMT provided detailed explanations of the errors and flaws in the 2024 Report, including those listed above. *Supra* ¶¶ 39-42. CXMT also explained why the 2024 Report's primary source, the Horizon Advisory report, is unreliable. *Supra* ¶ 43. Among other things, CXMT submitted a certified affidavit from its General Manager, attesting that CXMT is not controlled by or otherwise affiliated with the Chinese military and correcting other facts the 2024 Report had misstated or ignored. CXMT requested its prompt removal from the CMC List, given DoD's statutory obligation to update the list at least annually "based on the latest information available."[30]

45. Over the course of the next 10 months, CXMT engaged with DoD extensively. When DoD requested additional information in May 2025, CXMT promptly provided it. CXMT's counsel met with DoD in December 2025 and supplied further information in support of CXMT's challenge to the designation. CXMT followed up regularly on the Removal Request and consistently offered to provide further information and answer questions. DoD never stated that it lacked sufficient information from CXMT to decide the Removal Request.

**V. DoD Determines CXMT Should Be Removed from the CMC List, Publishes Notice of the Removal, Then Retracts the Notice Without Explanation**

46. On February 13, 2026, the Office of the Federal Register made available for public inspection DoD's "Notice of Availability of Designation of Chinese Military Companies" (2026-

---

[30] Section 1260H(b)(3).

02991), attached hereto as **Exhibit B**. The notice stated that the "Deputy Secretary of Defense ha[d] *determined* that the following previously listed entities should be removed from the most recent Section 1260H List announced on January 7, 2025,"[31] and went on to list CXMT among the entities to be delisted.

47. After placing the February 2026 Notice on the Federal Register for public inspection, DoD abruptly withdrew the notice without explanation.[32] Public reporting suggests that DoD withdrew the notice due to political pressure to add CXMT back to the list.[33]

**A. DoD Fails to Acknowledge Its Public Determination or Engage Further**

48. After seeing the February 2026 Notice and its subsequent withdrawal, CXMT promptly contacted DoD to request an explanation.

49. DoD responded on February 20, 2026, stating that it was still processing CXMT's Removal Request. DoD did not acknowledge that it had already "determined" that CXMT should be removed from the list, stating instead that "the 1260H list posted for public inspection on the Federal Register on February 13 may require updates based on the statutory requirement to review the most recent information available."[34]

---

[31] Exhibit B at 5 (emphasis added).

[32] Designation of Chinese Military Companies, 91 Fed. Reg. __ (Dep't of Def. Feb. __, 2026) (notice placed on public inspection Feb. 13, 2026, and withdrawn), https://public-inspection.federalregister.gov/2026-02991.pdf; *see* Federal Register Documents on Public Inspection for 2026-02-13, Off. of the Fed. Reg., https://www.federalregister.gov/public-inspection/2026/02/13 (last visited Aug. 24, 2026) ("An agency letter requesting withdrawal of this document was received after placement on public inspection.").

[33] Kate O'Keeffe, *Trump Administration's Pentagon Blacklist Misstep Roils US-China Tech Ties*, Bloomberg (May 6, 2026), https://www.bloomberg.com/news/features/2026-05-06/trump-administration-s-pentagon-blacklist-misstep-roils-us-china-tech-ties.

[34] February 20, 2026 email from DoD to CXMT's counsel, attached hereto as **Exhibit C**.

50. CXMT wrote to DoD in mid-March to request that DoD identify any new information it had not previously disclosed to CXMT and give CXMT an opportunity to be heard before taking further action based on any such information.[35] DoD replied in mid-April, refusing to provide any information but stating that it would "reach out if we have any questions as we continue to review the latest information available."[36] DoD did not reach out again until after redesignating CXMT as a CMC pursuant to the June Listing.

51. DoD's representations that it had withdrawn the February 2026 Notice to evaluate new information and that its review was ongoing, coupled with its refusal to identify any new information or grant CXMT's request to be heard, reflected a pattern of conduct inconsistent with a good faith effort to make a reasoned determination based on a sound factual record.

### B. CXMT Is Entitled to Know the Evidence DoD Relied Upon, Including Evidence of White House Involvement, to Depart from Its February Decision

52. The only explanation available to CXMT for DoD's abrupt change of course—from its published determination that CXMT did not belong on the CMC List to its inclusion of CXMT on a revised list—comes from a May 2026 Bloomberg article.

53. According to that reporting, the timing of the February 2026 Notice was tied to a planned high-level diplomatic meeting between the United States and China. National security officials viewed publication of the Notice in advance of the meeting as a means to signal a firm posture toward China without disrupting ongoing trade negotiations.[37] After months of

[35] March 13, 2026 letter from CXMT's counsel to DoD, attached hereto as **Exhibit D**.

[36] April 9, 2026 email from DoD to CXMT's counsel, attached hereto as **Exhibit E**.

[37] O'Keeffe, *supra* note 33.

interagency coordination ahead of publication, DoD included CXMT and Yangtze Memory Technologies Co., Ltd. ("YMTC") among the entities to be removed from the List.[38]

54. That decision drew objections from the White House, where officials are reported to have feared that removing CXMT and YMTC "would strengthen the Chinese companies at the expense of" competing chip producers.[39] Shortly after the February 2026 Notice was posted, a senior White House official contacted DoD, after which "[d]efense officials [] raced to get the list taken down."[40]

55. Upon information and belief, CXMT's inclusion on the June Listing was not based on the statutory criteria and the record evidence.

## VI. DoD Adds CXMT Back to the List in June

56. From mid-April to early June 2026, DoD refused to engage with CXMT—asked no questions, provided CXMT no opportunity to address new information, and gave no indication that the agency was contemplating a reversal of its prior determination.

57. On June 8, 2026, DoD published a "Notice of Availability of Designation of Chinese Military Companies," reversing its February 2026 removal decision and adding CXMT back to the CMC List.[41] In support of the June Listing, DoD provided its purported justification for the designation, abandoning its previous, baseless rationale that CXMT was a contributor to

---

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] U.S. Dep't of Def, *Entities Identified as Chinese Military Companies Operating in the United States in Accordance with Section 1260H of the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021 (Public Law 116-283, Section 1260H, as amended (codified at 10 U.S.C. § 113, note))* (June. 8, 2026), https://media.defense.gov/2026/Jun/08/2003945537/-1/-1/1/ENTITIES-IDENTIFIED-AS-CHINESE-MILITARY-COMPANIES-OPERATING-IN-THE-UNITED-STATES-IN-ACCORDANCE-WITH-SECTION-1260H.PDF.

the Chinese defense industrial base but advancing the erroneous finding that CXMT was "directly affiliated with MIIT and indirectly affiliated with SASAC and MIIT."[42]

58. The February 2026 Notice had previously determined that twelve companies should be removed from the 2025 CMC List. DoD reaffirmed the removal of all but two companies: CXMT and YMTC, the same two companies whose removal had drawn objections from the White House. *Supra* ¶¶ 52-54. In the June Listing that was published on DoD's website, DoD justified the removal of the other ten companies on the grounds that they do not "operate directly or indirectly in the United States."[43] DoD omitted that justification and related rationales from the version of the list it published in the Federal Register.[44] As discussed below, CXMT should have been removed for the same reason. *Infra* ¶¶ 104-09.

59. On June 10, 2026, DoD sent CXMT a letter dated June 5, 2026 stating that because "the Department is relisting CXMT on the section 1260H list," CXMT's Removal Request "has been rendered moot."

60. Later that day, DoD stated that it would provide CXMT with a copy of the "Department's rationale for including" CXMT on the CMC List. On June 29, 2026, DoD sent that rationale to CXMT in a 10-page report, attached hereto as **Exhibit F** (the "2026 Report").

61. The 2026 Report relies primarily on information that was available to DoD at the time of its 2024 Report, much of which the 2024 Report has referenced, now repackaged in support of a new statutory basis for CXMT's listing, i.e., its purported affiliations with MIIT and SASAC.

---

[42] *Id.* (citing Section 1260H(g)(2)(B)(i)(I)).

[43] U.S. Dep't of Defense, *supra* note 41, at 16.

[44] Notice of Availability of Designation of Chinese Military Companies, 91 Fed. Reg. 35189 (June 10, 2026).

The 2026 Report is riddled with factual errors and failures of reasoning, many of them carried over from the 2024 Report and previously refuted by CXMT.

62. For example, CXMT had already informed DoD that it has no presence in the China Sound Valley. The 2026 Report nevertheless claims that CXMT is directly affiliated with MIIT because MIIT "designated" CXMT as a key enterprise in the China Sound Valley. The report cites no source even remotely supporting that claim.[45] *Infra* ¶¶ 77-81.

63. In support of its finding that CXMT is indirectly affiliated with MIIT, the 2026 Report in essence relies on the same purported relationship between the Big Fund and CXMT that DoD relied on in the 2024 Report.[46] CXMT rebutted the relevant findings on this point in its correspondence and meeting with DoD in connection with CXMT's Removal Request. The 2026 Report makes two new assertions concerning CXMT in support of its indirect affiliation theory—that the Big Fund holds an 8.37% indirect stake in CXMT and that companies purportedly controlled by SASAC have an "unknown" stake in the Big Fund.[47] Neither of these allegations adds anything relevant to the record that was available to DoD when it advanced its MIIT affiliation theory in 2024 or when DoD determined that CXMT should be removed from the CMC List in February. *Infra* ¶¶ 88-97.

64. The absence of new information in the 2026 Report[48] is inconsistent with DoD's stated rationale for withdrawing the February Notice, i.e., that DoD's determination might "require

---

[45] 2026 Report at 6-7.

[46] 2026 Report at 8-9.

[47] *Id.*

[48] While the 2026 Report does reference one new article dated a week after the February Notice, it adds nothing to DoD's indirect affiliation theory. As relevant here, it only states that MIIT oversees the Big Fund, which is now in its phase III, information already referenced in the 2024 Report. *See* 2024 Report at 8-9.

updates based on the statutory requirement to review the most recent information available."[49] The 2026 Report also fails to acknowledge, much less address, DoD's change in position from the February delisting, further underscoring the pretextual nature of the agency's relisting decision.

65. CXMT does not understand DoD to have based its listing rationale on information contained in the "classified annex" referenced only in passing in the 2026 Report's Summary Findings section.[50] If DoD does intend to rely on such information, CXMT respectfully requests that the Court compel DoD to grant a member of CXMT's outside counsel team who holds the necessary security clearance access to review the relevant classified materials.[51]

66. On August 7, 2026, CXMT submitted a request for reconsideration of its inclusion on the June Listing. DoD has not responded to this request.

## VII. DoD's Actions Have Inflicted, and Threaten to Inflict, Substantial Harm on CXMT

67. As a result of DoD's unlawful decision to place and maintain CXMT on the CMC List, CXMT has suffered significant and ongoing harm.

68. The CMC designation disrupts CXMT's existing and potential business relationships. Potential customers have declined to pursue business with CXMT because of the designation. Moreover, legislative enactments and proposals have already inflicted or threaten to inflict substantial harm should this wrongful designation not be promptly removed. As noted

---

[49] Exhibit C.

[50] 2026 Report at 6.

[51] *See SZ DJI Tech.* 2026 WL 2357473, at *7 ("[T[he district court is free to assess in the first instance whether and to what extent DJI or its counsel may receive some form of access to the classified record."); *see also Greene v. McElroy*, 360 U.S. 474, 496 (1959) (observing that "in all types of cases where administrative and regulatory actions [a]re under scrutiny," "the evidence used to prove the Government's case must be disclosed to the [regulated] individual so that he has an opportunity to show that it is untrue."); *TikTok Inc. v. Garland*, 145 S. Ct. 57, 74 (2025) (Gorsuch, J., concurring) ("Efforts to inject secret evidence into judicial proceedings present obvious constitutional concerns.").

above, the CMC designation means that DoD and the Department of Homeland Security may not enter into a contract with CXMT.[52] Moreover, in December of 2024 Congress enacted a federal "[p]rohibition on contracting with covered entities that contract with lobbyists for Chinese military companies."[53] Congress has directed the President to determine whether entities on the CMC List should also be added to the "Non-SDN Chinese Military-Industrial Complex Companies List,"[54] which would prohibit U.S. persons from trading the listed entities' public securities.[55]

69. The wrongful CMC designation, which "nam[es] and sham[es]" designated companies, has also stigmatized CXMT, as intended.[56] By branding CXMT as part of China's military apparatus, the designation impugns the reputation of a company that has expended substantial effort and resources to prevent its products from being deployed for military use.[57] A U.S. congressman has also commented that the CMC List is a "warning" that the designated companies are those "working with the Chinese military against the U.S. national interests," and with which U.S. companies "must stop doing business."[58]

---

[52] *Supra* note 18; § 805(a)(1), 137 Stat. at 315; § 536, 138 Stat. at 622; 42 U.S.C. § 18912(a)(2), (a)(3)(B), (c)(1).

[53] 10 U.S.C. § 4663.

[54] § 8531, 139 Stat. at 1936.

[55] 31 C.F.R. § 586 et seq.

[56] *See* Jordan Brunner & Emily Weinstein, *Chinese Military-Civil Fusion and Section 1260H*, THE LAWFARE INST. (May 4, 2021), https://www.lawfaremedia.org/article/chinese-military-civil-fusion-and-section-1260h-congress-incorporates-defense-contributors ("In the context of Chinese military companies, Congress began assembling this mosaic more than 20 years ago with Section 1237, which combined a sanctions regime with a 'naming and shaming' regime.").

[57] *See also Hesai*, 2026 WL 2409540, at *4 ("It is undisputed [that the CMC designation inflicts reputational harm]: Publication on the Section 1260H list labels Hesai a 'Chinese military company,' a designation that 'can be a blow to a company's reputation.'").

[58] Press Release, Select Comm. on the Strategic Competition Between the U.S. & the Chinese Comm. Party, Moolenaar: American Companies & Governments Should Cut Ties With New Pentagon-Listed Chinese Military Companies (June 8, 2026),

## VIII. DoD's Designation of CXMT Lacks Legal and Evidentiary Support Sufficient to Satisfy the Requirements of the APA

70. The justification that DoD provided for designating CXMT as a CMC, as set forth in the June Listing and required under Section 1260H(b)(2), is that "CXMT is directly affiliated with MIIT and indirectly affiliated with SASAC and MIIT (Section 1260H(g)(2)(B)(i)(I))."[59]

71. None of these purported justifications withstands scrutiny. The 2026 Report misapplies the plain text of the statute, relies on an outdated and factually flawed record (including erroneous statements copied from the 2024 Report that CXMT has already shown to be false), and ultimately fails to identify any evidence sufficient to satisfy the governing statutory criteria.

### A. DoD's Finding That CXMT Is Directly Affiliated with MIIT Is Not Supported by the Record

72. Section 1260H authorizes designation of an entity that is, as relevant here, "affiliated with" MIIT or SASAC.[60] The statute defines "affiliated with" to mean "in close formal or informal association."[61]

73. The surrounding terms demonstrate that "affiliated with" reaches only control-like relationships. The words paired with "affiliated with"—"owned by, controlled by, or beneficially owned by"—are terms of control. A word is known by the company it keeps, and "affiliated with" cannot be given a breadth inconsistent with its neighbors.[62] This Court has already read the

---

https://chinaselectcommittee.house.gov/media/press-releases/moolenaar-american-companies-governments-should-cut-ties-with-new-pentagon-listed-chinese-military-companies.

[59] U.S. Dep't of Defense, *supra* note 41.

[60] 1260H(g)(2)(B)(i)(I).

[61] *Id.* (g)(1).

[62] *See Yates v. United States*, 574 U.S. 528, 543 (2015); *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995); *United States v. Williams*, 553 U.S. 285, 294-95 (2008). Courts and DoD's own regulations accordingly treat an "affiliate" as an entity that controls, is controlled by, or is under common control with another. *See Emory Univ., Inc. v. Neurocare, Inc.*, 985 F.3d 1337, 1345 (11th Cir. 2021); 32 C.F.R. §§ 232.3, 117.3.

ownership-and-control cluster this way.[63] Construing the predecessor provision, it held that those terms are "focused on control or effective control" of the entity by the government actor.[64] It agreed with decisions that construed the affiliation language of a related statute to require control.[65]

74. Section 1260H defines "affiliated with" as being "in close formal or informal association," and the Department of Justice's Office of Legal Counsel has described "close association" as generally referring to circumstances such as two distinct business operations under common ownership or control.[66] A "close" association thus requires more than distant or attenuated links and, where shareholding is concerned, contemplates a level of influence.[67] Reading the definition to require neither control nor influence in such a context would yield an untenable construction of the relevant statutory provisions. Congress surely did not append to a series of terms meant to signify control—e.g., ownership, control, or beneficial ownership—a final, expansive term in affiliation that would negate the limitation imposed by its predecessors.[68] Indeed, construing the term "close formal or informal association" to capture even the most attenuated connections would render the phrase "affiliated with" unconstitutionally vague for

---

[63] *See SZ DJI Tech. Co. v. U.S. Dep't of Def.*, 2025 WL 2761210, at *19 (D.D.C. Sep. 26, 2025), *aff'd in part, rev'd in part on other grounds*, 2026 WL 2357473 (D.C. Cir. Aug. 14, 2026).

[64] *Id.*

[65] *See Xiaomi Corp. v. Dep't of Def.*, 2021 WL 950144, at *6 (D.D.C. Mar. 12, 2021) (interpreting "affiliated with" element of "Communist Chinese military company" designation to contemplate control).

[66] *See* Exclusion of Religiously Affiliated Schs. From Charter-Sch. Grant Program, 2020 WL 7319331, at *2 (O.L.C. Feb. 18, 2020) ("Generally speaking, one entity is 'affiliated' with another if the two have a close association, such as when they have formally distinct business operations but are under common ownership or control.") (cited by *Xiaomi*, 2021 WL 950144, at *6).

[67] *See Close*, Oxford English Dictionary, II.20.b. a1680, https://www.oed.com/dictionary/close_adj#1474789030 (last visited Aug. 24, 2026) (defining "close" as "strong; deep, firmly established" when used to describe connection and association).

[68] *Truck Trailer Mfrs. Ass'n, Inc. v. EPA*, 17 F.4th 1198, 1206 (D.C. Cir. 2021) ("grouped words should be given meanings that are similar in nature").

failure to give fair notice of its reach and for failure to prevent arbitrary or discriminatory enforcement.

75. The affiliation contemplated by the statute must be a present affiliation; the statute speaks in the present tense, and a relationship that existed years earlier does not constitute a present affiliation.[69] Read together with the terms surrounding it—"owned by, controlled by, or beneficially owned by"—"affiliated with" denotes a present, close, control-like relationship, not a remote or attenuated one.

76. The 2026 Report asserts that CXMT "acknowledged that it was affiliated with MIIT through a 2018 recognition."[70] That inverts what CXMT actually said. In the June 5, 2025 communication cited in the 2026 Report, CXMT explained that its 2018 recognition as a "One-Stop Application Model Enterprise" was purely honorary, conferred no funding or research relationship, and does not create an affiliation with MIIT. Rather than conceding an affiliation, CXMT denied it. A lapsed, honorary recognition does not give rise to a present, close association, but the more fundamental defect is that DoD's finding rests on a mischaracterization of the very submission it purports to summarize.

77. DoD's remaining support for finding a direct affiliation with MIIT is that MIIT "designated" CXMT as a "'China Sound Valley' key enterprise."[71] DoD states that enterprises in the China Sound Valley have long-term relationships with MIIT, and that CXMT settled into a "China Sound Valley Economic and Technological Development Zone Information and Innovation Industrial Park."[72] None of these justifications is supported by the record.

---

[69] *See Sherley v. Sebelius*, 644 F.3d 388, 394 (D.C. Cir. 2011).

[70] 2026 Report at 6.

[71] 2026 Report at 7.

[72] *Id.*

78. First, MIIT did not designate any "key enterprise" in the China Sound Valley. The article DoD cites for the proposition that CXMT was designated as a "key enterprise" does not mention any designation made by MIIT.

79. Unable to point to any interaction between MIIT and CXMT, the 2026 Report repeats an old theory that has already been proven wrong—specifically, that CXMT is linked to MIIT through the China Sound Valley. As CXMT explained in its Removal Request, however, with a certified affidavit from its General Manager, CXMT does not have any location in the China Sound Valley. DoD states that "[t]here is no information indicating that CXMT does not currently have a location in the 'China Sound Valley,'" placing the burden on CXMT to prove a negative rather than proffering any evidence, much less substantial evidence, in support of the agency's own findings. Even if DoD were right (it is not) that an enterprise's presence in the China Sound Valley might evidence affiliation with MIIT, CXMT has no such presence and DoD has not shown otherwise.

80. CXMT is located in the Hefei Economic and Technological Development Area, where numerous multinational corporations have operations. Several other multinational corporations, such as Whirlpool and NSK, sit even closer to the China Sound Valley than CXMT. Under DoD's logic, those corporations would be affiliated with MIIT as well.

81. The report claims that CXMT "settled into" the "China Sound Valley Economic and Technological Development Zone Information and Innovation Industrial Park", which is "also known as 'China Sound Valley.'"[73] This is erroneous. First, CXMT never settled into such an "Information and Innovation Industrial Park." Second, the sources cited by the 2026 Report show that this "China Sound Valley Economic and Technological Development Zone Information and

[73] 2026 Report at 7.

Innovation Industrial Park" is a distinct entity from "China Sound Valley," established by different entities and at different times: the former was a provincial development zone built and coordinated by a provincial entity in 2020, and the latter was co-established by MIIT no later than 2017.

82. Furthermore, the 2026 Report continues to cite the Horizon Advisory report, when CXMT has already explained why it is untrustworthy. *Supra* ¶ 43. DoD's continued reliance on sources already shown to be mistaken and untrustworthy underscores that DoD's redesignation of CXMT was preordained and not the product of lawful, reasoned decision-making.

### B. DoD's Justification Based on Indirect Affiliation Has No Statutory Support

83. DoD's reliance on CXMT's purported "indirect affiliation" with SASAC and MIIT exceeds the agency's statutory authority as a matter of law, independent of the absence of record evidence sufficient to support its findings. This is so because "indirect affiliation" does not provide a basis for CMC designation. DoD reads the phrase "directly or indirectly" in Section 1260H(g)(2)(B)(i)(I) to reach across the ownership-and-control terms it properly modifies to modify the term "affiliated with," as well, resulting in a freestanding category of "indirect affiliation" that the statute does not contain.

84. The statutory text provides that a Chinese military company is one "[d]irectly or indirectly owned by, controlled by, or beneficially owned by, affiliated with, or in an official or unofficial capacity acting as an agent of or on behalf of … MIIT … ." The phrase "directly or indirectly" most naturally modifies only the ownership-and-control cluster that immediately follows it—"owned by, controlled by, or beneficially owned by"—not the later, separately stated forms of connection, "affiliated with" or "acting as an agent of or on behalf of." In other words, the structure of the series provides a set of three subparts, defining a CMC to include a company that is (i) directly or indirectly owned by, controlled by, or beneficially owned by; (ii) affiliated

with; or (iii) acting as an agent of or on behalf of (in an official or unofficial capacity) MIIT.[74] Reading "directly or indirectly … to sweep across the entire series" would also "produce awkward results, such as 'indirectly … in an official or unofficial capacity acting as an agent.'"[75]

85. Reading "indirectly" to expand on the informal associations captured by bare affiliation, already defined to reach "informal association," would give the statute an unbounded reach—potentially sweeping in any attenuated, downstream connection—contrary to the narrowing function the definition serves.[76]

86. This Court has held, in a parallel context, that a single past instance of cooperation with MIIT does not establish affiliation, and that for ownership to constitute affiliation, it must include "some level of control, not just mere possession of … equity."[77] This Court also has construed "affiliated with" in this context to require control by one entity over another.[78]

87. Properly construed, then, Section 1260H does not authorize designation on a theory of "indirect" affiliation.

### C. DoD's Finding That CXMT Is Indirectly Affiliated with MIIT Is Unsupported by the Record

---

[74] *See Lockhart v. United States*, 577 U.S. 347, 351 (2016) ("where it takes more than a little mental energy to process the individual entries in the list, ... it [is] a heavy lift to carry the modifier across them all."); *City of Salisbury, N.C. v. Fed. Energy Regul. Comm'n*, 36 F.4th 1164, 1168-69 (D.C. Cir. 2022) ("ordinarily, and within reason, modifiers and qualifying phrases attach to the terms that are nearest" and the "series-qualifier canon" requires nouns to "appear in a 'straightforward, parallel construction'").

[75] *See WuXi AppTec*, 2026 WL 2279624, at *8 (observing that "directly or indirectly" most naturally modifies only the ownership-and-control terms).

[76] Section 1260H(g)(1); *WuXi AppTec*, 2026 WL 2279624, at *8 (observing that "indirect affiliation" is redundant of the definition of affiliation).

[77] *SZ DJI Tech.*, 2025 WL 2761210, at *19.

[78] *See Xiaomi*, 2021 WL 950144, at *6.

88. In any event, the evidentiary record does not support a finding that CXMT is affiliated with MIIT, indirectly or otherwise.

89. In support of its finding that CXMT is indirectly affiliated with MIIT, DoD relies on the Big Fund's purported status as a minority shareholder of CXMT's parent coupled with the Big Fund's purported relationship with MIIT.[79]

90. As an initial matter, the 2026 Report fails to specify or establish any relationship between MIIT and the Big Fund that would give MIIT operational influence over, or even involvement in, CXMT's activities. The absence of any such relationship means there is no "close association" between MIIT and CXMT.

91. Like the 2024 Report, the 2026 Report claims, without citation, that MIIT "manage[s]" the Big Fund.[80] In fact, not a single source cited in either the 2024 or 2026 Report supports that statement. The 2026 Report states that the Big Fund was established "under the guidance of MIIT and the Ministry of Finance," that the "Big Fund…operates as a corporate entity under MIIT," and that the Big Fund is "overseen by MIIT." None of these statements supports a finding of management.[81]

92. The record shows, at most, that MIIT provided high-level regulatory oversight and guidance for a fund that focused on the industry within MIIT's regulatory mandate. Neither the 2026 Report nor its sources state that MIIT has any involvement in, much less control or influence over, the day-to-day investment activities in the Big Fund, such as voting the Big Fund's shares in CXMT's parent. Yet these shares are the only connection through which the Big Fund might

---

[79] 2026 Report at 8-9.

[80] 2026 Report at 4, 8.

[81] 2026 Report at 8-9.

arguably be associated with CXMT. Nor does the 2026 Report claim or provide any evidence showing direct investment by MIIT into CXMT or its parent company. The mere receipt of an investment from a fund does not create a "close association" with the fund's manager or regulator; were it otherwise, a mutual-fund manager would be "affiliated with" every company in which its funds hold shares—potentially hundreds or thousands of them.

93. The ownership record confirms the absence of control. CXMT is wholly owned by its corporate parent, whose shares are dispersed broadly among numerous institutional investors, none holding anything close to a controlling interest. DoD identifies a single tie between CXMT and MIIT: the Big Fund Phase II's 8.37% stake in CXMT's parent. That connection is insufficient. DoD does not contend that the Big Fund owns or controls any other shareholder of CXMT's parent, and the record forecloses any such contention. The 8.37% stake thus stands alone; it is not the visible edge of some larger, aggregated Big Fund position that might approach control. Neither the Big Fund nor MIIT has authority to control CXMT, CXMT's parent, or the board of CXMT's parent.

94. Failing to identify any evidence that MIIT actually controls the Big Fund or its investment activities, the 2026 Report again resorts to distortion of the record. DoD claims that MIIT has issued policies that guide the activities of the Big Fund.[82] The source DoD cites, however, says only that MIIT policy points to the need to leverage the Big Fund and other industry funds; it says nothing about the Big Fund's investment activities as to CXMT, and nothing suggesting that MIIT directs, controls, or votes the Big Fund's stake in CXMT's parent.

95. When, in its 2024 Report, DoD concluded that CXMT was affiliated with MIIT because MIIT co-managed the Big Fund, which invested in CXMT, CXMT explained in its

---

[82] 2026 Report at 9.

Removal Request that such an attenuated connection cannot constitute affiliation. *Supra* ¶ 39. DoD apparently understood and accepted this position when it determined in advance of publishing the February 2026 Notice that CXMT should be removed from the CMC List. However, in the 2026 Report, DoD has reversed course without explanation, stating that it "has considered CXMT's submissions but does not find its argument compelling."[83]

96. DoD's shifting treatment of this same shareholder evidence further demonstrates its ends-driven interpretation of Section 1260H. In its original designation, DoD relied on MIIT's management of the Big Fund to assert that CXMT was affiliated with MIIT through "project funding and investment"[84] under what is now Section 1260H(g)(3)(B)(i). Based on that assertion, DoD then concluded that CXMT was a military-civil fusion contributor to the Chinese defense industrial base under what is now Section 1260H(g)(2)(B)(i)(II). The 2026 Report now characterizes substantially the same relationship as an "affiliation" under Section 1260H(g)(2)(B)(i)(I), even though subsections (g)(3)(B)(i) and (g)(2)(B)(i)(II) remain available. DoD makes no effort to explain this change in statutory theory, or to articulate a principled distinction between the two provisions as applied to CXMT.

97. The same is true of DoD's ownership allegations. DoD expressly alleges that SASAC-owned entities hold an indirect ownership interest in CXMT, yet it declines to analyze that relationship under the distinct indirect-ownership prong of Section 1260H(g)(2)(B)(i)(I). Instead, it invokes the alleged indirect ownership interest as evidence of "affiliation." DoD's willingness to move the same facts from prong to prong, without explanation, is the signature of a conclusion in search of a rationale.

---

[83] 2026 Report at 8.

[84] 2024 Report at 8.

### D. DoD's Finding That CXMT Is Indirectly Affiliated with SASAC Is Unsupported by the Record

98. DoD infers an "indirect close formal association" between CXMT and SASAC from the ownership structure of the Big Fund Phase II. DoD asserts that SASAC-controlled China Mobile Communications Group Co., Ltd. and China Telecom Group Co., Ltd. are among the 15 limited partners that have an "unknown" stake in the Big Fund Phase II, which owns an 8.37% stake in CXMT.[85]

99. The above statement is erroneous and contradicted by DoD's own sources. First, DoD asserts that SASAC controls China Telecom Group Co., Ltd., yet the source it cites describes SASAC's relevant stake in this entity as a "minority" stake. Second, the sources DoD cites report that the Big Fund Phase II has twenty-seven shareholders, not fifteen limited partners. Third, CXMT is a wholly-owned subsidiary, and the Big Fund Phase II's 8.37% stake is in CXMT's parent.

100. Independent of those errors, DoD's assertions demonstrate that, to the extent SASAC and CXMT have any association at all, it is distant and attenuated, not "close." The 2026 Report describes a chain of relationships, some arising from minority-stake investments, with as many as five links in the chain between SASAC and CXMT—from SASAC through China Mobile Communications Group Co., Ltd., through a subsidiary[86], to the Big Fund Phase II, to CXMT's parent company, and, eventually, on to CXMT (or, through another route, from China Telecom Group Co., Ltd. to the Big Fund Phase II). At most, this chain of connections suggests that certain entities purportedly controlled by SASAC hold an unquantified, indirect interest in CXMT's

---

[85] 2026 Report at 8-9.

[86] DoD asserts that China Mobile Communications Group Co., Ltd. invests in the Big Fund through China Mobile Capital Holding Co., Ltd. 2026 Report at 9 n. c.

parent, perhaps without SASAC even being aware of that holding. The 2026 Report does not claim that SASAC has a controlling stake in CXMT or otherwise controls CXMT through this long chain of relationships, nor does it offer any evidence to that effect.

101. DoD's assertion that SASAC exercises broad supervisory authority over China Mobile and China Telecom—selecting their executives, auditing them, and overseeing their overseas projects—does not fill the gaps in the evidence or the agency's reasoning.[87] That SASAC may supervise state-owned enterprises does not show an association between SASAC and CXMT, which sits three or four steps removed from those enterprises. The 2026 Report also fails to identify the telecoms' ownership stakes in the Big Fund, describing them only as "unknown."[88] Having declined to quantify those stakes, DoD cannot show that they translate into any influence over the Big Fund, much less over CXMT's parent or CXMT.

102. The 2026 Report also contends that because companies in China are generally required to cooperate with the government, entities owned by SASAC are "subject to an equal or greater measure of control."[89] If a generalized legal duty borne by every Chinese company established affiliation, the statutory designation criteria Congress enacted—including the statute's careful enumeration of ownership, control, and affiliation relationships—would collapse, because all Chinese companies, on DoD's theory, are affiliated with the state. In any event, DoD's claim that SASAC-owned enterprises are subject to greater control still does not show that the two telecoms exercise any control over CXMT, by virtue of their unquantified equity holdings in an investment fund with a minor interest in CXMT's parent.

---

[87] 2026 Report at 9-10.

[88] 2026 Report at 9.

[89] 2026 Report at 10.

103. At bottom, CXMT is not a state-owned enterprise, is not listed on the SASAC directory, and is not subject to any of the supervisory mechanisms the 2026 Report describes.

### E. The Record Does Not Provide Any Evidence that CXMT "Operates in" the United States

104. An entity cannot be designated a Chinese military company unless it "operat[es] directly or indirectly in the United States or any of its territories and possessions."[90] On December 23, 2024, Congress added a statutory definition of what it means to operate "directly or indirectly in the United States," providing that the phrase includes "an entity selling goods in, or receiving goods or services from, the United States or any of its territories or possessions, regardless of whether the entity has a physical presence in the United States."[91]

105. In the 2024 Report, DoD based its finding that CXMT operates in the United States on a one-off return shipment to Nextest's California office and purported cooperation between CXMT and certain U.S. companies. CXMT rebutted this prong of DoD's listing basis in the Removal Request. *Supra* ¶ 41.

106. The 2026 Report advances two new theories in its place: CXMT's asserted status as a customer of ACM Research, Inc., a California semiconductor-equipment company, and a 2020 patent-license agreement between CXMT and Rambus, Inc., a California semiconductor company.[92]

107. Neither ground finds support in the record. The ACM assertion is both outdated and factually wrong. The 2026 Report relies on a purported customer relationship from more than three years earlier, and CXMT is not a customer of ACM Research at all. CXMT's only

---

90 Section 1260H(a).

91 Section 1260H (g)(4).

92 2026 Report at 11-12.

commercial relationship runs through CleanChip Technologies Limited, a Hong Kong entity owned by ACM Research (Shanghai), Inc., a separately incorporated Chinese company. Any equipment CleanChip supplied to CXMT was manufactured in and delivered from Shanghai, not the United States.

108. The Rambus license also fails to demonstrate indirect operation in the United States because a patent license is not a good or service. A patent-license agreement is an arm's-length transaction for rights in intangible intellectual property, and it does not involve the performance of labor or activities that "services" entail. A single licensing relationship with a United States company does not transform a foreign licensee into an entity that operates, directly or indirectly, in the United States.

109. CXMT does not operate directly or indirectly in the United States and therefore does not satisfy an element of designation as a CMC.

## IX. DoD's June Listing Fails to Acknowledge Its Change in Position and Is Preordained

110. Even if DoD's stated rationale for its June Listing of CXMT were supported by coherent reasoning, plausible interpretations of the governing statute, and substantial record evidence (it is not), its designation of CXMT would still be arbitrary and capricious for two reasons.

111. First, the June Listing represents a reversal of DoD's previous decision to remove CXMT from the CMC List in February 2026. However, neither the June Listing nor the 2026 Report contains any explanation (or even acknowledgment) of DoD's reversal of its February 2026 decision. That failure is contrary to law.[93]

---

[93] *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (holding that an agency that changes an earlier position must display awareness that it is doing so and give good reasons for the change).

112. Second, and relatedly, the June Listing is the product of a pretextual process pursuant to which redesignation of CXMT was preordained, with stated rationale reverse-engineered to produce the desired outcome.

### A. DoD's Report Fails to Acknowledge, Much Less Explain, Its Change in Position

113. DoD's February 2026 removal of CXMT from the CMC List constituted final agency action. Agency action is final when it marks the consummation of the agency's decision-making and determines rights or obligations or produces legal consequences.[94] Both conditions were met. The removal was DoD's definitive determination that CXMT is not a CMC, and it carried legal consequences by lifting the statutory restrictions that attend a CMC listing.[95] Here, DoD's determination, filed for public inspection, is valid against the public and marks the point at which the agency has acted.[96]

114. Having reached that determination, DoD could not reverse it without a reasoned explanation. An agency that changes position must display awareness that it is changing position and give good reasons for the change.[97] That obligation is at its most demanding where, as here, the agency's new position rests upon factual findings that contradict those underlying its prior position.[98]

---

[94] *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

[95] *See id.*; Section 1260H(b)(2)(A).

[96] *See Humane Soc'y of the U.S.*, 41 F.4th at 570.

[97] *See FCC v. Fox Television*, 556 U.S. at 515 ("[T]he requirement that an agency provide reasoned explanation for its action would ordinarily demand that it display awareness that it *is* changing position.") (emphasis in original).

[98] *Id.*

115. DoD failed that requirement at every step. DoD determined in February that CXMT is not a CMC, then determined in June that it is; yet it refused to acknowledge that it was changing position. Its new position does not rest on "most recent" information, notwithstanding its representation to CXMT to the contrary. *Supra* ¶¶ 49-51, 62-64. It did not provide any reasons for the change in position.

116. Additionally, among the twelve companies that were removed from the CMC List in February, only CXMT and another company were redesignated in June. In the June Listing, DoD claims that the remaining companies "do not operate directly or indirectly in the United States."[99] However, upon information and belief, CXMT has no more U.S. ties than these companies, and DoD did not provide any explanation for why CXMT should be treated differently from these companies. Such failure is another independent reason that the June Listing is arbitrary and capricious.[100]

### B. DoD's June Listing of CXMT Was Preordained and the Justification Offered Was Pretextual

117. DoD's refusal to acknowledge the February delisting, instead claiming it was still conducting routine fact-finding, combined with the June Listing largely based on the same, erroneous facts (*supra* at ¶¶ 61-64) together suggest a decision made in response to political pressure, not based on fair evaluation of the record (*supra* at ¶¶ 52-54).

118. Upon information and belief, and as reported by Bloomberg, political considerations infected the CMC designation process throughout 2026. As alleged *supra* at ¶¶ 52-54, the release of the February 2026 Notice was initially timed based on foreign policy and

---

[99] U.S. Dep't of Defense, *supra* note 41.

[100] *See Petroleum Commc'ns, Inc. v. FCC,* 22 F.3d 1164, 1172 (D.C. Cir. 1994) (An agency cannot "treat[] similarly situated parties differently" without an "adequate explanation.").

economic considerations. According to public reporting, the White House objected to DoD's correct decision, consistent with the evidence and the law, to remove CXMT from the CMC List, and ultimately caused DoD to withdraw the February Notice.

119. On information and belief, CXMT's inclusion on the June Listing did not turn solely on the statutory criteria. Although DoD represented for months that it was evaluating the "most recent" information bearing on CXMT's status, the 2026 Report identifies no material information beyond what DoD already possessed in 2024, and it offers no explanation for DoD's reversal of the February 2026 Notice. The fact that the asserted "most recent information" does not justify the decision to relist CXMT in June further supports this inference.

## STATEMENT OF CLAIMS FOR RELIEF

120. DoD's designation of an entity as a CMC is subject to the requirements of the Administrative Procedure Act, including that the agency articulate a coherent explanation for its action with a "rational connection between the facts found and the choice made."[101]

121. Where an agency makes conclusions based on a factual record, its determination must be "supported by substantial evidence."[102] The APA thus requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,"[103] or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."[104]

---

[101] *Luokung Tech. Corp. v. Dep't of Def.*, 538 F. Supp. 3d 174, 183 (D.D.C. 2021) (quoting *Motor Vehicle Mfrs. Ass'n of U.S. Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

[102] *Id.* (quoting *Dickinson v. Zurko*, 527 U.S. 150, 164 (1999)).

[103] 5 U.S.C. § 706(2)(A),

[104] *Id.* § 706(2)(C).

122. Even in the national security context, where courts generally afford heightened deference to agency determinations, "courts retain a role, and an important one, in ensuring that agencies have engaged in reasoned decisionmaking."[105]

**COUNT I**

**Violation of the Administrative Procedure Act: Arbitrary and Capricious Agency Action, Action in Excess of Statutory Authority, Action Contrary to Required Procedure, Action Unsupported by Substantial Evidence and Otherwise Not in Accordance with Law**
**5 U.S.C. § 706(2)**

**(Against All Defendants)**

123. Plaintiff realleges and incorporates by reference the allegations contained in all of the preceding paragraphs.

124. DoD's designation of CXMT on the June 8, 2026 CMC List was the consummation of DoD's decision-making process and constitutes final agency action subject to judicial review.

125. Defendants designated CXMT solely under the affiliation prong of Section 1260H(g)(2)(B)(i)(I)—that CXMT is "directly affiliated with MIIT and indirectly affiliated with SASAC and MIIT."

126. An agency's action is arbitrary and capricious when its explanation "runs counter to the evidence before the agency,"[106] and "a basic mistake of fact renders the [agency's] decision arbitrary and capricious."[107] A court may not defer to a designation resting on "inaccurate or unreasoned justifications."[108]

---

[105] *Luokung Tech.*, 538 F. Supp. 3d at 182 (quoting *Judulang v. Holder*, 565 U.S. 42, 53 (2011)).

[106] *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)

[107] *Code v. McCarthy*, 959 F.3d 406, 409 (D.C. Cir. 2020).

[108] *Env't Def. Fund v. EPA*, 922 F.3d 446, 454 (D.C. Cir. 2019).

127. DoD's designation of CXMT as a CMC stands or falls on the three affiliation findings, and each rests on at least one factual premise that is objectively wrong. *Supra* ¶¶ 70-103. Defendants' designation is therefore arbitrary and capricious.

128. Defendants' designation of CXMT as a CMC is also arbitrary and capricious because Defendants failed to articulate a satisfactory explanation for it.

129. "Reasoned decision-making requires that an agency 'articulate a satisfactory explanation for its action' with a 'rational connection between the facts found and the choice made.'"[109] Defendants' conclusory analysis does not supply a "rational connection" between the facts found and the decision to designate CXMT as a CMC. This failure is compounded by Defendants' refusal to consider publicly available information, which disproves Defendants' claims. And it is made still worse by Defendants' disregard of the APA's requirement that they "articulate a comprehensible standard" for which entities qualify as CMCs.[110]

130. An agency's factual findings must also be "supported by substantial evidence."[111] Here, the evidence that Defendants purport to rely upon is either false, contravened by the public record or other evidence in the record, or otherwise insufficient to support Defendants' factual finding that CXMT is a CMC. Defendants' factual findings are thus unsupported by substantial evidence.

131. Additionally, the statute does not permit CMC listing based on "indirect affiliation." *Supra* ¶¶ 83-87. DoD's designation of CXMT based on its purported "indirect affiliation" with SASAC and MIIT is therefore in excess of its statutory jurisdiction.

[109] *Xiaomi*, 2021 WL 950144 at *4 (quoting *Motor Vehicle Mfrs*, 463 U.S. at 43).

[110] *ACA Int'l v. FCC*, 885 F.3d 687, 700 (D.C. Cir. 2018).

[111] *Foster v. Mabus*, 103 F. Supp. 3d 95, 109 (D.D.C. 2015) (citation omitted).

132. Finally, DoD's purported justification—that CXMT is "directly affiliated with MIIT and indirectly affiliated with SASAC and MIIT"—lacks both factual and legal support. Because CXMT fits none of the other categories listed by the statute for qualifying as a Chinese Military Company, CXMT does not qualify as a CMC.

133. Defendants' designation of CXMT as a CMC is therefore "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory jurisdiction," "without observance of procedure required by law," and "unsupported by substantial evidence."[112]

**COUNT II**

**Violation of the Administrative Procedure Act: Arbitrary and Capricious Agency Action—Failure to Acknowledge a Change in Position,**
**5 U.S.C. § 706(2)(A)**

**(Against All Defendants)**

134. Plaintiff realleges and incorporates by reference the allegations contained in all of the preceding paragraphs.

135. The February 2026 Notice was final agency action under Section 1260H. On February 13, 2026, the Deputy Secretary "determined" that CXMT "should be removed from the most recent Section 1260H List," and DoD placed that determination on public inspection with the Office of the Federal Register. *See supra* ¶ 46. Publication of the list in the Federal Register is the mechanism Section 1260H prescribes for additions and deletions,[113] and a document placed on public inspection carries legal effect.

---

[112] 5 U.S.C. § 706(2)(A), (C)-(E).

[113] Section 1260H(b).

136. An agency that changes an earlier position must, at a minimum, display awareness that it is doing so and supply reasons for the change, and those reasons must appear in the record.[114] DoD did neither. *See supra* ¶¶ 114-16.

137. DoD did not supply reasons for its change in position from removing CXMT from the 1260H List in February 2026 to adding CXMT back to the list in June 2026. DoD did not even acknowledge the change. DoD instead told CXMT it was still processing the Removal Request and that the February 2026 Notice "may require updates based on the statutory requirement to review the most recent information available." *See supra* ¶ 49. DoD's position that it must act on "most recent information available" implies a continuing duty to review and update; if so, the question is what information DoD had before, versus after, the withdrawal. But DoD did not identify any new information in the 2026 Report justifying its change in position. Moreover, DoD also acknowledged the removal of ten other entities from the February list on the ground that they did not operate in the United States. CXMT also does not operate directly or indirectly in the United States, which supports the inference that the reversal rested on reasoning the Report does not articulate.

138. An agency's failure to acknowledge and explain a change from its own prior determination is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under the APA.[115] CXMT is further entitled to have the administrative record include the materials surrounding the February 2026 determination and its same-day withdrawal—including

[114] *FCC v. Fox Television*, 556 U.S. at 515.

[115] 5 U.S.C. § 706(2)(A).

any communications that prompted it—so that the change of position may be reviewed against the record.[116]

**COUNT III**

**Violation of the Administrative Procedure Act:
Arbitrary and Capricious Agency Action,
5 U.S.C. § 706(2)(A)**

**(Against All Defendants)**

139. Plaintiff realleges and incorporates by reference the allegations contained in all of the preceding paragraphs.

140. Defendants' pretense—that their decision to designate CXMT as a CMC is the result of their routine decision-making process on the basis of new information—is inconsistent with the evidence that they reversed their own prior decision to remove CXMT from the CMC List due to political considerations beyond what Section 1260H permits. Even if Defendants' stated rationale supported CXMT's designation as a CMC in June 2026, such rationale is pretextual, and therefore the designation is arbitrary and capricious.

141. "The reasoned explanation requirement of administrative law . . . is meant to ensure that agencies offer *genuine* justifications for important decisions, reasons that can be scrutinized by courts and the interested public. Accepting contrived reasons would defeat the purpose of the enterprise."[117]

---

[116] *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,* 591 U.S. 1, 20 (2020); *SEC v. Chenery Corp.,* 318 U.S. 80, 87-88 (1943).

[117] *Dep't of Commerce v. New York*, 588 U.S. 752, 785 (2019).

142. "When the record reveals that an agency preordained its decision, and the agency merely reverse engineered a policy to justify the same outcome—thereby engaging in a pretextual action, that is itself a violation of the APA."[118]

143. Vacatur of a pretextual agency action is still warranted even if "[t]he evidence before the [agency] supported that decision."[119]

144. In communications with CXMT, DoD all but ignored the February 2026 Notice and subsequent reversal of position. After withdrawing the February 2026 Notice, DoD merely stated that the List "may require updates based on the statutory requirement to review the most recent information available,"[120] without further explanation or acknowledgement of the February determination.

145. These assertions are "incongruent with . . . the agency's priorities and decisionmaking process."[121] Upon information and belief, DoD withdrew the February 2026 Notice because of political considerations omitted from the report and beyond the statutory criteria.[122] The real course of events, therefore, "does not match the explanation [Defendants] gave for [their] decision."[123]

146. The recycled nature of DoD's rationale independently establishes pretext. DoD justified the withdrawal of the February 2026 Notice on the need to consider "the most recent

---

[118] *Kingdom v. Trump*, 2026 WL 1746251, at *11 (D.D.C. June 17, 2026).

[119] *Dep't of Commerce v. New York*, 588 U.S. at 774, 785 (upholding lower court's vacatur of pretextual agency action).

[120] Exhibit C.

[121] *Dep't of Commerce v. New York*, 588 U.S. at 785.

[122] O'Keeffe, *supra* note 33.

[123] *Dep't of Commerce v. New York*, 588 U.S. at 784.

information available," yet the 2026 Report relies primarily on information that was available to DoD at the time of its 2024 Report, which CXMT has rebutted.

147. Defendants' pretextual reversal of their decision to remove CXMT from the CMC List is therefore arbitrary and capricious and therefore in violation of the Administrative Procedure Act.[124]

**COUNT IV**

**Violation of the Administrative Procedure Act:**
**Agency Action Unlawfully Withheld or Unreasonably Delayed,**
**5 U.S.C. § 706(1)**

**(Against All Defendants)**

148. Plaintiff realleges and incorporates by reference the allegations contained in all of the preceding paragraphs.

149. On the one-year anniversary of the publication of the 2025 CMC List, Defendants failed to delete CXMT from the CMC List, a discrete agency action that Section 1260H requires.

150. 5 U.S.C. § 706(1) creates a cause of action to "compel agency action unlawfully withheld or unreasonably delayed." Claims under Section 706(1) "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take."[125]

151. Here, Section 1260H(b)(3) lays down such a requirement, stating that the Secretary of Defense "shall make . . . deletions to the most recent list" of Chinese Military Companies "based on the latest information available."

152. After CXMT was first erroneously designated a CMC on January 7, 2025, on numerous separate occasions in 2025, CXMT provided Defendants evidence establishing it does

---

[124] 5 U.S.C. § 706(2)(A).

[125] *Ctr. for Biological Diversity v. Zinke*, 260 F. Supp. 3d 11, 20 (D.D.C. 2017) (citing *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)).

not meet the statutory criteria for CMC designation, as well as explanations of flaws in Defendants' stated explanations for its January 2025 designation.[126] Despite being aware of evidence contrary to its conclusions, DoD failed to remove CXMT from the CMC List within one year of its January 7, 2025 designation. DoD's removal of CXMT from the February 2026 Notice, relying on information it had access to in January, confirms that it should have done so in January.

153. DoD's redesignation of CXMT as a CMC in June 2026 compounds and again confirms this error. The 2026 Report relies on evidence that is false, contravened by the public record, or otherwise insufficient—which CXMT had refuted in its submissions to Defendants in 2025—to support Defendants' factual finding that CXMT is a CMC, thereby indicating Defendants, relying on the latest information available to it in January 2026, unlawfully withheld and unreasonably delayed deletion of CXMT from the 2025 CMC List.

154. In these circumstances, Defendants have failed to remove CXMT from the CMC List in violation of their mandatory duty under Section 1260H. Defendants' failure to remove CXMT from the CMC List thus qualifies as an agency action "unlawfully withheld or unreasonably delayed" under the APA.

## COUNT V

**Violation of the Administrative Procedure Act:**
**Agency Action Contrary to Constitutional Right, Power, Privilege, or Immunity,**
**5 U.S.C. § 706(2)**

**(Against All Defendants)**

155. Plaintiff realleges and incorporates by reference the allegations contained in all of the preceding paragraphs.

[126] *Supra* ¶¶ 44-45; 2026 Report at 6.

156. The Fifth Amendment to the U.S. Constitution provides: "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."[127]

157. The Due Process Clause of the Fifth Amendment requires that parties deprived of their liberty receive adequate notice and an opportunity to be heard.[128]

158. If CXMT is found to be "operating in the United States" within the meaning of Section 1260H, CXMT is entitled to the protections of the Due Process Clause.

159. As a result of Defendants' actions, CXMT has been prohibited from bidding on federal government contracts and suffers stigma in the private marketplace for being branded a national security threat to the United States. CXMT has thus suffered deprivations of its protected liberty interests under the Fifth Amendment.[129]

160. Despite repeated requests by CXMT, and contrary to Defendants' representations, CXMT did not receive any notice or process after February 2026 and prior to being redesignated as a CMC in June 2026. The denial of pre-deprivation process is unjustified by any national security interests, and the risk of erroneous deprivation of liberty from Defendants' actions is intolerably high under the Fifth Amendment.

161. To the extent Defendants rely on classified information as a basis for designating CXMT, that reliance also serves to deprive CXMT of its due-process right to an opportunity to be heard and defend itself.

---

[127] U.S. Const. amend. V.

[128] *See Mathews v. Eldridge*, 424 U.S. 319, 333-34 (1976).

[129] *Hesai Tech. Co., Ltd. v. Dep't of Def.*, 2026 WL 2409540, at *3-4; *Trifax Corp. v. District of Columbia*, 314 F.3d 641, 643 (D.C. Cir. 2003).

162. In these respects, Defendants' designation should be set aside because it is "contrary to [CXMT's] constitutional right, power, privilege, or immunity."[130]

## PRAYER FOR RELIEF

CXMT respectfully prays that this Court enter an order and judgment:

A. Declaring that Defendants' designation of CXMT as a CMC is null, void, and with no force and effect;

B. Declaring that Defendants' designation is arbitrary, capricious, and an abuse of discretion within the meaning of 5 U.S.C. § 706(2); in excess of statutory jurisdiction, authority, or limitations within the meaning of 5 U.S.C. § 706(2); contrary to constitutional right within the meaning of 5 U.S.C. § 706(2); and not in accordance with law within the meaning of 5 U.S.C. § 706(2).

C. Declaring that Defendants' failure to delete CXMT from the CMC List is action unlawfully withheld within the meaning of 5 U.S.C. § 706(1);

D. Vacating and setting aside the designation;

E. Compelling Defendants to delete CXMT from the CMC List;

F. Permanently enjoining Defendants and their officers, employees, and agents from enforcing, implementing, applying, or taking any action whatsoever under, or in reliance on, the designation;

G. Permanently enjoining Defendants and their officers, employees, and agents from redesignating CXMT on the CMC List without providing due process;

---

130 5 U.S.C. § 706(2)(B).

H. Awarding Plaintiff the costs of this litigation, including reasonable attorneys' fees; and

I. Such other and further relief as this Court may deem just and proper.

Dated: August 28, 2026

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

/s/ Derek L. Shaffer
Derek L. Shaffer (Bar No. 478775)
Jacob C. Beach (Bar No. 90013937)
555 13th Street NW, Suite 600
Washington, DC 20004
derekshaffer@quinnemanuel.com
jacobbeach@quinnemanuel.com
Tel.: (202) 538-8000
Fax: (202) 538-8100

Michael B. Carlinsky
(*pro hac vice forthcoming*)
Samuel P. Nitze
(*pro hac vice forthcoming*)
Jianjian Ye
(*pro hac vice forthcoming*)
Jingfei Lu
(*pro hac vice forthcoming*)
295 5th Avenue, 9th Floor
New York, New York 10016
michaelcarlinsky@quinnemanuel.com
samuelnitze@quinnemanuel.com
jianjianye@quinnemanuel.com
jingfeilu@quinnemanuel.com
Tel.: (212) 849-7000
Fax: (212) 849-7100

*Attorneys for Plaintiff*